IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DANIEL CRAIG LOOS,                       2:15-CV-00065-BR

       Plaintiff,             OPINION AND ORDER

v.

DEPARTMENT OF CORRECTIONS, et
al.,

       Defendants.


JOHN D. BURGESS
Law Offices of Daniel Snyder
1000 S.W. Broadway
Suite 2400
Portland, OR 97205
(503) 241-3617

         Attorneys for Plaintiff

ELLEN F. ROSENBLUM
Attorney General
TODD ALBERT
Assistant Attorney General
1162 Court Street N.E.
Salem, OR 97301-4096
(503) 947-4700

         Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion
(#41) to Copy and Inspect Medical and Mental Health Records.  For
the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN
PART** Defendants' Motion.


<u>BACKGROUND</u>

On January 12, 2015, Plaintiff Daniel Craig Loos, who was an
inmate at Snake River Correctional Institution during the
relevant period, filed a *pro se* Complaint pursuant to § 1983
against numerous Defendants alleging claims for excessive force
and denial of adequate medical care in violation of the Eighth
and Fourteenth Amendments to the United States Constitution.

After several Orders dismissing Plaintiff's Complaints with
leave to amend, John Burgess was appointed as counsel for
Plaintiff on July 28, 2015.

On December 30, 2015, Plaintiff filed a Third Amended
Complaint in which she[1] alleged in pertinent part:

> This is a civil rights action for Defendants' use
> of excessive force against Plaintiff and
> Defendants' denial of medical care to Plaintiff.
> Plaintiff was physically assaulted on multiple
> occasions resulting in physical injuries,
> including, but not limited to, her elbow being
> broken.  Defendants have denied Plaintiff medical

---

[1] "Plaintiff is a female person who was previously regarded
as being a male person."  Third Am. Compl. at ¶ 4.

2 - OPINION AND ORDER

> care by failing to provide care for injuries
> resulting from the above-referenced assaults, and
> by refusing to provide hormone treatment.  This
> action also arises from Defendants' refusal to
> remove Plaintiff from Snake River Correctional
> Institution, despite the fact that Plaintiff
> identifies as a woman and receives threats from
> fellow inmates of sexual assault and other
> violence.

Third Am. Compl. at ¶ 1.  Plaintiff seeks damages and unspecified "equitable relief."

On March 1, 2016, Defendants provided to Burgess a Medical Release Authorization for Plaintiff's entire medical record.  The Release specifically stated Plaintiff authorized the Oregon Department of Corrections (ODOC) "to release a copy of [Plaintiff's] medical information" to Todd Albert, Assistant Oregon Attorney General.  Decl. of Todd Albert, Ex. 1 at 2.

On March 9, 2016, Burgess advised Albert via email that Plaintiff would "not sign a medical release."  Albert Decl., Ex. 1 at 3.

On March 28, 2016, Defendants provided to Plaintiff their First Request for Production of Documents, which included Defendants' requests for various medical records including, for example, a request for

> [a]ll records for Plaintiff five years prior to
> Plaintiff's incarceration on or about January 12,
> 2004 to the present, including but not limited to
> records of treatment by any health care provider
> for the same or any similar medical condition
> and/or areas of psychological and/or mental
> impairment and/or limitation and/or pain and
> suffering alleged to be a result of the subject

incident.

Albert Decl., Ex. 2 at 3.

On April 13, 2016, Plaintiff provided to Defendants her[2] First Request for Production of Documents, which included various requests for medical records including, for example, a request for

> [a]ll documents, reports, recordings, and videotapes, including, but not limited to, chart notes, medical reports, records, diagnostic studies, and testing (x-rays, MRIs, scans, EEGs, psychological evaluations, neuropsychological testing, and other studies) regarding all medical treatment provided to Plaintiff by Defendants State of Oregon and/or the Oregon Department of Corrections from January 12, 2004, to the present.

Albert Decl., Ex. 3 at 7.

On May 2, 2016, Plaintiff provided to Defendants her Response to Defendant's First Request for Production of Documents in which Plaintiff objected to, among other things, Defendants' request for all of Plaintiff's medical records, including records for five years before her incarceration.  Plaintiff objected on the grounds that Defendants' requests were overbroad and unduly burdensome because the issues raised in Plaintiff's Third Amended Complaint only concern events between August 2014 and July 2015, but Defendants requested Plaintiff's medical records back to 1999.  Plaintiff also objected to Defendants' request for

---

[2] Because Plaintiff is transgendered and refers to herself as "her" throughout the materials, the Court does as well.

Plaintiff's mental-health records because "Plaintiff has not made a claim for anything other than garden variety emotional distress." Albert Decl., Ex. 4 at 4.

On May 10, 2016, Albert emailed Burgess a stipulated protective order and a copy of a medical release form seeking release of Plaintiff's medical records to Albert for the shortened period of July 8, 2014, to the present. Albert also offered to have an ODOC medical technician assist Plaintiff in signing the HIPAA release if Plaintiff so desired.

On May 11, 2016, Burgess responded to Albert's email and noted in pertinent part:

> I thought you were going to have a medical staff person release the medical files to me and I was going to review, bates number and provide to you the relevant medical records. As I mentioned before, I am not going to simply turn over my client's medical file for DOJ review--that would not happen in any other lawsuit. I have edited the release to release the documents to my office. I will review and provide all responsive documents.

Albert Decl., Ex. 5 at 2.

On May 11, 2016, Albert responded to Burgess as follows:

> We are currently seeking all relevant medical and mental health records to be released to us for her most recent period of incarceration (7/8/14 - present). . . . We would provide you with a copy of everything received. The records would be subject to the SPO. This is not an unreasonable or unusual request as [Plaintiff's] physical health and emotional distress have been put into issue. I believe our current request is narrowly tailored to accomplish the appropriate goals. Since we are not in agreement about this, we will

> go ahead and move the court for an order for the
> full records (from 7/8/14 to present) to be
> disclosed to us.

Albert Decl., Ex. 5 at 2.

Finally on May 11, 2016, Burgess responded to Albert:

> I do not believe that in any case ALL of a
> plaintiff's medical records are made relevant
> simply because she has alleged physical injuries
> as part of her claim. . . .  I do not know what
> the medical records in this case will show, but I
> am not willing to allow the defendant to take them
> wholesale and sift through what it thinks is
> relevant.

Albert Decl., Ex. 5 at 1.

According to Plaintiff, counsel did not have any further communication about this issue.  Burgess "continued to attempt to acquire Plaintiff's medical release," and "[o]n May 23, 2016, [he] received Plaintiff's signed medical release."  Decl. of John Burgess at ¶ 5.  The medical release that Plaintiff signed and provided to Burgess permits ODOC to release Plaintiff's entire medical record to Burgess rather than to Albert or to the Oregon Department of Justice.

On May 23, 2016, Defendants filed a Motion to Copy and Inspect Medical and Mental Health Records in which they seek an order "permitting defendants to copy and inspect all of Plaintiff's relevant medical and mental health records kept by the Oregon Department of Corrections from July 8, 2014 to the present."

On May 26, 2016, Burgess emailed Albert and attached the

6 - OPINION AND ORDER

medical release that Plaintiff signed permitting the ODOC to
release her medical records to Burgess.  Burgess asked Albert to
forward the release to ODOC so it could provide Burgess with
Plaintiff's medical file.  Burgess noted if Albert failed to
advise Burgess by May 30, 2016, that he had forwarded the release
to ODOC, Burgess would send the release to ODOC's health-records
department and request Plaintiff's medical file directly.  Decl.
of John Burgess, Ex. 2 at 1.

On May 26, 2016, Albert responded to Burgess noting:

> Ordinarily we would assist in obtaining the
> plaintiff's medical records at no charge when a
> copy is provided to the defendants as well.
> However, if your intention is to submit a public
> records request to obtain your own copy of the
> records, please submit it directly to ODOC.  You
> will be contacted regarding the cost of providing
> a copy of the record.

Burgess Decl., Ex. 2 at 1.

On June 9, 2016, Plaintiff filed a Response to Defendants'
Motion to Copy and Inspect Medical Records in which she asserts
Defendants are not entitled to Plaintiff's entire medical record,
Plaintiff's medical record should be released only to Plaintiff,
and Plaintiff should not be required to pay the copying costs of
her medical record.


## DISCUSSION

Defendants assert Plaintiff has put her medical condition at
issue and, therefore, has waived any privilege protecting her

7 - OPINION AND ORDER

medical records.  Defendants, however, note Oregon Revised
Statute § 179.495(1) provides inmate's medical records "are not
subject to disclosure unless the disclosure is permitted or
authorized by the Department of Corrections in compliance with
[Oregon statute] or upon order of a court of competent
jurisdiction."  Thus, Defendants seek a court order permitting
Defendants to inspect and to copy Plaintiff's "relevant medical
and mental health records" from July 8, 2014, to the present.

     Plaintiff does not dispute Defendants are entitled to the
relevant portions of Plaintiff's medical record.  Plaintiff notes
she has signed a release for her medical records, but she agreed
only to release them to her counsel, who will, in turn, provide
the relevant records to Defendants.

     Plaintiff also asserts Albert's statement in his May 26,
2016, email that Defendants would provide a copy of Plaintiff's
medical record to Plaintiff at no cost only if a copy is provided
to Defendant as well indicates:  (1) "[D]efendants will not
comply with their ordinary obligations to provide discoverable
documents in their own possession unless Plaintiff makes the
concession of turning over all of her medical records regardless
of their relevance to this lawsuit" and (2) Defendants believe
they can force Plaintiff to pay for "ordinary document
discovery."

**I.  Production of Plaintiff's Medical Records**

It is unclear whether Defendants are asserting they will not comply with Plaintiff's request for her medical records unless Plaintiff agrees to a release of all of her medical records to Defendants.  As noted, in Defendants' Motion to Copy they move for an order permitting Defendants "to copy and inspect all of Plaintiff's relevant medical and mental health records kept by [ODOC] *from July 8, 2014, to the present*."  Emphasis added.

To the extent that Defendants assert they are entitled to Plaintiff's entire medical record from 1999 through the present, the Court **DENIES** Defendants' Motion.

To the extent that Defendants request permission to inspect and to copy Plaintiff's relevant medical records from July 8, 2014, to the present, the Court **GRANTS** Defendants' Motion subject to the following:  Because Plaintiff has the right to her medical records, they should first be released only to Plaintiff's counsel pursuant to the terms of Plaintiff's Release, and Plaintiff's counsel must then review the records to comply with Defendants' requests for production relevant to Plaintiff's medical records.  If Plaintiff's counsel determines any of those records should be withheld from production to Defendant, Plaintiff must provide the Court with an *ex parte* showing as to why such records are withheld.  Accordingly, to the extent that Defendants seek an order requiring Plaintiff's medical records to be released directly to Defendants, the Court **DENIES** Defendants'

9 - OPINION AND ORDER

Motion.

## II.  Cost of Production

Plaintiff relies on Federal Rule of Civil Procedure 34 to support her assertion that Defendants should have to bear the costs of copying and producing Plaintiff's medical records to Plaintiff.  Rule 34 requires a party to provide documents in their "possession, custody or control."

Neither party cites binding authority for the question of payment for copies.  The court in *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2008 WL 3876131 (N.D. Cal. Aug. 19, 2008), however, sets out the standard.  In that case the defendant objected to a magistrate judge's order requiring the defendant to pay for copying certain documents that it was required to produce in discovery.  The district court agreed the magistrate judge erred when he required the defendant to pay all of the copying costs. The court explained:

> Rule 34(a) states that "a party may serve on any other party a request . . . (1) to produce and permit the requesting party . . . to inspect, copy, test or sample . . . (A) any designated documents."
>
> * * *
>
> However, a party producing documents will ordinarily not be put to the expense of making copies for the requesting party.  Even cases cited by Plaintiff make clear that "a party need only make requested documents available for inspection and copying; it need not pay copying costs." *Clever View Investments, Ltd. v. Oshatz*, 233 F.R.D. 393, 394 (S.D.N.Y. 2006) and cases

10 - OPINION AND ORDER

cited therein; *see also Obiajulu v. City of Rochester, Dept. of Law*, 166 F.R.D. 293, 297 (W.D.N.Y. 1996) ("Rule 34 allows the plaintiff 'to inspect and copy' relevant documents and does not require a responding party to pay for copying costs of voluminous materials").

2008 WL 3876131, at *1 (quotations omitted).  Other courts have also held Rule 34 requires the producing party to bear the expense "of searching for and responding to discovery requests. However, . . .  a party responding to discovery requests need only make requested documents available for inspection copying, and need not pay copying costs of opposing parties."  *F.D.I.C. v. Johnson*, No. 2:12-cv-00209-KJD-PAL, 2013 WL 1195698, at *2 (D. Nev. Mar. 22, 2013).  The court in *Johnson* specifically noted the "advisory committee notes to Rule 34 state, parties are only required to allow other parties to inspect, copy, test or sample items, not to pay for the costs of inspecting, copying, testing or sampling the items produced."  *Id*.

The court in *Tierno*, however, exercised its "broad discretion" to require the defendant to "share some costs of production" because "the records are spread all over California," the defendant failed "to produce the documents promptly," and the defendant "will undoubtedly rely on the documents as well."  2008 WL 3876131, at *2.

Here the record does not indicate Defendants have failed to promptly produce Plaintiff's medical records, but it does indicate Plaintiff's medical records are entirely under

11 - OPINION AND ORDER

Defendants' control and that Defendants will likely seek to rely on some of the documents in this litigation.

On this record and in the exercise of its discretion, the Court **DIRECTS** Defendants to copy and to provide Plaintiff's entire medical record that is in the custody and control of ODOC to Plaintiff's counsel. The Court also **DIRECTS** Defendants to advance the costs for the copying of Plaintiff's medical records with leave for Defendants to seek at the conclusion of this matter to recover the costs of copying that portion of Plaintiff's medical records not sought by Defendants in their Motion to Copy and Inspect.

<u>CONCLUSION</u>

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion (#41) to Copy and Inspect Medical and Mental Health Records.

IT IS SO ORDERED.

DATED this 2nd day of August, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge